**This order is SIGNED.**


**Dated: January 11, 2024**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*rdr*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>DIMITRIOS G. GOLESIS,<br><br>Debtor-in-Possession. | Bankruptcy Case No. 23-22015<br>Chapter 11 (Subchapter V) |
| In re:<br><br>GOLESIS PROPERTIES, LLC,<br><br>Debtor-in-Possession. | Bankruptcy Case No. 23-22042<br>Chapter 11 (Subchapter V)<br><br>Hon. Kevin R. Anderson<br><br>JOINTLY ADMINISTERED |

## MEMORANDUM DECISION ON DEBTORS'
## MOTION FOR RETROACTIVE EMPLOYMENT

Strict deadlines and bright-line rules abound in the Bankruptcy Code, which are necessary to protect the integrity of the bankruptcy system and ensure that its carefully crafted statutes work together to achieve the overarching goals of the Code. However, such deadlines and rules have a downside. The same rigidity that helps create clarity, remove ambiguity, and foster predictability in the application of the law can also lead to harsh results. The matter before the Court deals with one such bright-line rule and its harsh result—in particular, the relatively common but unfortunate situation where debtor's counsel fails to file an employment application on the petition date and then seeks to have the subsequently-filed application deemed effective, *post facto*, as of the petition

date for purposes of qualifying for compensation. The Tenth Circuit has spoken on this issue and

has done so clearly. The Court is sympathetic to the financial consequences this bright-line rule

can levy against debtor's counsel, but it is bound by Tenth Circuit precedent. Accordingly, the

Court issues the following Memorandum Decision denying counsel's request for *post facto* relief.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

### A. The Bankruptcy Filings and Applications to Employ.

1. On or about May 1, 2023, Dimitrios Golesis ("Mr. Golesis") contacted the law firm

of Diaz & Larsen ("Counsel") to represent him and his related business, Golesis Properties, LLC

("Golesis Properties" and, collectively with Mr. Golesis, the "Debtors"), of which he is the 100%

owner and managing member.[2]

2. On May 1 and 18, 2023, Golesis Properties paid Counsel retainers that totaled

$12,000.[3] Counsel used the retainer to pay the $1,738 Chapter 11 filing fee for Golesis Properties

and applied an additional $5,950 of the retainer to cover Counsel's pre-petition fees and costs for

services rendered to Golesis Properties, leaving a balance of $4,312.[4]

3. Prior to his individual bankruptcy filing, Mr. Golesis paid Counsel a retainer of

$22,000.[5]

---

[1] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a), made applicable to this contested matter by Fed. R. Bankr. P. 9014 and 7052. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed to be findings of fact, and they shall be equally binding as both.

[2] Case No. 23-22042, ECF No. 1, at 5; ECF No. 8, ¶ 10.

[3] Case No. 23-22042, ECF No. 2, at 22.

[4] Case No. 23-22042, ECF No. 8, ¶ 13.

[5] Case No. 23-22015, ECF No. 1, at 145. This disclosure does not list the date of the retainer payment.

4.       On May 9, 2023, Mr. Golesis completed his credit counseling course,[6] which is a prerequisite to filing an individual bankruptcy petition.[7]

5.       On May 18, 2023, at 12:02 p.m., Mr. Golesis filed his individual Chapter 11 petition, along with his completed Statement of Financial Affairs, Schedules, and other required bankruptcy papers on the same day.[8]

6.       On May 19, 2023, at 11:27 a.m., Golesis Properties filed its Chapter 11 petition, along with its completed Statement of Financial Affairs, Schedules, and other required bankruptcy papers on the same day.[9]

7.       On motion of the Debtors, and after notice and a hearing, the Court entered an order jointly administering the Debtors' cases under Case No. 23-22015 with the Hon. Kevin R. Anderson as the presiding judge.[10]

8.       On May 31, 2023, 12 and 13 days after the Debtors' respective petition dates, Counsel filed in both cases its applications to be employed as Debtors' counsel under § 327 (the "Applications to Employ").[11] Both applications were supported by affidavits signed by Andres Diaz, Counsel's manager, and notarized by Mr. Larsen on the 31st.[12]

---

[6] Case No. 23-22015, ECF No. 5.

[7] *See* 11 U.S.C. § 109(h). All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.

[8] Case No. 23-22015, ECF Nos. 1-5. These papers included: (1) the Sworn Statement of Dimitri Golesis Regarding Section 1116 Requirements for Small Business Case, which was notarized on May 18 by Timothy J. Larsen, a partner with Counsel, ECF No. 1, at 8-9; (2) the 2021 federal tax returns, including attached schedules, forms, and worksheets, for Mr. Golesis and his spouse, *id.* at 10-144; and (3) Counsel's Rule 2016 disclosure, *id.* at 145.

[9] Case No. 23-22042, ECF Nos. 1-2. These papers included: (1) the Sworn Statement of Dimitri Golesis Regarding Section 1116 Requirements for Small Business Case, which was also notarized by Mr. Larsen, ECF No. 1, at 6-7; (2) the 2022 Profit and Loss Statement for Golesis Properties, *id.* at 8; and (3) Counsel's Rule 2016 disclosure, *id.* at 9.

[10] Case No. 23-22015, ECF No. 26; Case No. 23-22042, ECF No. 22. Golesis Properties' case had initially been assigned to the Hon. Peggy Hunt.

[11] Case No. 23-22015, ECF No. 9; Case No. 23-22042, ECF No. 7.

[12] Case No. 23-22015, ECF No. 10; Case No. 23-22042, ECF No. 8.

9.      The Applications to Employ stated that the Counsel "intends to apply to the Court for allowance of compensation and reimbursement of expenses . . . for all services performed and expenses incurred after the date of filing of this Application."[13]

10.     The Applications to Employ did not request that orders authorizing Counsel's employment be retroactive to the petition dates of the two cases.

11.     On June 13, 2023, Counsel filed proposed orders granting the Applications to Employ.[14] Neither order contained language authorizing Counsel's employment retroactive to the Debtors' petition dates.

12.     On July 11, 2023, the Court conducted status conferences in both cases as required by § 1188(a). The Court noted that under the rationale articulated in *Mark J. Lazzo, P.A. v. Rose Hill Bank (In re Schupbach Invs., L.L.C.)*, 808 F.3d 1215 (10th Cir. 2015), and because the Applications to Employ did not request that Counsel's employment be retroactive to the petition dates, it would only approve Counsel's employment from the filing date of the applications, which was May 31, 2023.

13.     On July 14, 2023, the Court entered orders in both cases granting the Applications to Employ "effective as of May 31, 2023, the date of the Application, without prejudice to the Debtor to seek authorization to employ [Counsel] retroactively as of the petition date."[15]

**B.  Motion for Employment to Be Effective as of the Petition Dates.**

14.     On July 25, 2023, Counsel filed its Motion for Order Authorizing the Appointment of Diaz & Larsen as Counsel for the Debtors in Possession Retroactively as of the Petition Dates (the "Motion").

---

[13] Case No. 23-22015, ECF No. 9, ¶ 13; Case No. 23-22042, ECF No. 7, ¶ 13.

[14] Case No. 23-22015, ECF No. 14; Case No. 23-22042, ECF No. 11.

[15] Case No. 23-22015, ECF No. 27; Case No. 23-22042, ECF No. 23.

15.     On August 10, 2023, the U.S. Trustee filed its objection to the Motion.

16.     The Motion asserts the following reasons why Counsel did not file the Applications on the petition dates:

a.     Because of the two separate filings, one the day after the other, the efforts of Counsel on May 18 and 19, 2023, were consumed by the filing of the two bankruptcy cases.

b.     After filing the two petitions, Counsel focused its attention on preparing the Debtors for the Initial Debtor Interviews with the U.S. Trustee that were scheduled approximately a week after the petition dates. These services included reviewing the U.S. Trustee Guidelines with the Debtors, assisting the Debtors in opening debtor-in-possession accounts, gathering and providing insurance information, and preparing the Initial Financial Reports and related attachments.

c.     Between the time of the filing of the petitions and the filing of the Applications to Employ, Counsel worked on the applications and the supporting affidavits, but was unable to notarize the affidavits until Mr. Larsen, who served as the notary for the affidavits and who had left town on May 24, returned on May 30.

17.     The Court conducted a hearing on the Motion on August 22, 2023, at which time it took the Motion under advisement and permitted supplemental briefing.

18.     Counsel and the U.S. Trustee filed their supplemental briefs on September 5, 2023.

## II.    ANALYSIS

Chapter 11 debtors need competent professionals to shepherd them through the complexities of the bankruptcy process. However, such professionals must qualify and be approved by the court under the gatekeeping function of § 327 and Fed. R. Bankr. P. 2014, and

such approval is the predicate for compensation.[16] Indeed, until the bankruptcy court approves the employment application, the Tenth Circuit considers bankruptcy professionals to be mere volunteers who cannot be compensated.[17]

In these cases, Counsel did not file the Applications to Employ until almost two weeks after the bankruptcy filings. Counsel now asks the Court to approve its employment *post facto* to the petition dates for purposes of qualifying for compensation for services rendered during this gap period.[18] The Tenth Circuit has spoken specifically and clearly on this scenario: "a bankruptcy court may approve [a professional's] employment *post facto*, thereby entitling [it] to seek fees for work performed prior to approval," but such *post facto* approval—also called retroactive approval—"is only appropriate in the most extraordinary circumstances."[19] In other words, absent "the most extraordinary circumstances," a professional cannot be compensated for services rendered before the filing of its application to employ and its subsequent approval by the court.

The policy rationale behind the rule that "approval must precede the [professional's] engagement" is likewise clear. "Prior approval is strongly preferred because it permits close supervision of the administration of an estate, wards off 'volunteers' attracted to the kitty, and

---

[16] *See Mark J. Lazzo, P.A. v. Rose Hill Bank (In re Schupbach Invs., L.L.C.)*, 808 F.3d 1215, 1219 (10th Cir. 2015) ("Where an attorney has been 'employed under section 327,' a bankruptcy court is empowered to award him compensation from the estate." (citing § 330(a)(1))).

[17] *Id*. (quoting *Interwest Bus. Equip., Inc. v. U.S. Tr. (In re Interwest Bus. Equip., Inc.)*, 23 F.3d 311, 318 (10th Cir. 1994); *see also Connolly v. U.S. Tr. (In re Morreale)*, 595 B.R. 409, 418 (10th Cir. BAP 2019) ("The Tenth Circuit's case law in this regard is as unforgiving as it is crystal clear: Absent court approval of an individual's employment as a professional . . . , the individual is a volunteer and is entitled to no compensation from the estate for any services rendered." (citing *Schupbach*, 808 F.3d at 1219)).

[18] In fact, the Court previously addressed this question in a decision less than five years ago. *See In re Sugarloaf Holdings, LLC*, No. 18-27705, 2019 Bankr. LEXIS 1172, 2019 WL 1494544 (Bankr. D. Utah Apr. 2, 2019). The Court issues the present Memorandum Decision in part to expand on and clarify its *Sugarloaf* decision; to account for intervening case law potentially bearing on the validity of *Schupbach* (*see* Part II.A, *infra*); and to provide additional guidance to the local bar.

[19] *Schupbach*, 808 F.3d at 1220 (citing *In re Albrecht*, 233 F.3d 1258, 1260 (10th Cir. 2000) and quoting *Land v. First Nat'l Bank of Alamosa (In re Land)*, 943 F.2d 1265, 1267-68 (10th Cir. 1991)).

avoids duplication of effort."[20] This requirement also allows the bankruptcy court to review any conflicts of interest and to assess "the competency, experience, and integrity of debtor's counsel and other professionals."[21] Lastly, it furthers the policies of "promoting transparency in the use of estate assets in the early stages of a case, controlling or limiting expenses that impact the estate, and providing interested parties with notice and an opportunity to object to proposed employment before any services are undertaken by professionals."[22]

Counsel does not dispute that *post facto* approval of its Applications to Employ requires extraordinary circumstances.[23] Instead, Counsel argues that it is because of extraordinary circumstances that they were filed 12 and 13 days after the Debtors' respective petition dates. Therefore, the question presented to the Court is whether the circumstances asserted by Counsel rise to the level of being extraordinary under controlling precedent such that Counsel can be compensated for services rendered during the gap period between the petition dates and the filing of the Applications to Employ.

### A. The Effect of *Acevedo* on the Validity of *Schupbach*.

Before considering whether Counsel's circumstances were extraordinary, the Court must first address an issue raised by the U.S. Trustee in its objection to the Motion. Namely, that the Supreme Court's decision in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo*

---

[20] *Id.* at 1219 (quoting *In re Singson*, 41 F.3d 316, 319 (7th Cir. 1994)).

[21] *In re Hungry Horse, LLC*, No. 16-11222, 2018 Bankr. LEXIS 2264, at *8, 2018 WL 3655382, at *4 (Bankr. D.N.M. July 31, 2018) (citing *In re Arkansas Co.*, 798 F.2d 645, 648 (3d Cir. 1986)).

[22] *In re Wellington*, 628 B.R. 19, 29 (Bankr. M.D.N.C. 2021) (citations omitted); *see also In re Young*, 646 B.R. 779, 783 (Bankr. W.D. Pa. 2022) ("[A] timely employment application promotes transparency by ensuring that no professionals are working surreptitiously on the debtor's behalf, only to emerge from the shadows after court oversight has ended.").

[23] At oral argument, Counsel suggested that because *Schupbach* did not involve an employment application filed within 21 days of the petition date, as happened in the Debtors' cases (see Bankruptcy Rule 6003(a)), *Schupbach* is not only distinguishable, but irrelevant. Even though Counsel raised this argument for the first time at oral argument, the Court will still consider it because it can be succinctly resolved. Nothing in *Schupbach* suggests an exception for employment applications filed within the initial twenty-one-day period, and the Court sees no grounds to distinguish it or *Sugarloaf* on the basis advocated by Counsel. For a more detailed explanation, *see* Part II.B.2.d, *infra*.

*Feliciano*[24] precludes the Court from granting Counsel's Motion. The U.S. Trustee's argument implies that the Supreme Court's *Acevedo* decision abrogated the Tenth Circuit's *Schupbach* decision.[25] Indeed, since *Acevedo* did not expressly overrule *Schupbach*, abrogation is the only basis by which *Acevedo* could have eliminated the ability of a professional to obtain retroactive approval of its employment in this Circuit.[26]

The Court concludes that *Acevedo* did not abrogate *Schupbach*—that is, it did not contradict or invalidate the Tenth Circuit's ruling on retroactive approval. In the first place, the facts of *Acevedo* differ substantially from those of the Debtors' cases. *Acevedo* did not involve the retroactive approval of bankruptcy employment applications. Indeed, its only connection to a bankruptcy proceeding was when one of the defendants filed for bankruptcy and then another defendant, based on "related to" jurisdiction,[27] briefly removed the Puerto Rico case to a federal district court.[28] Instead, the crux of *Acevedo* involved a separate jurisdictional question; namely, whether a federal court's remand order, with a *nunc pro tunc* effective date, could cure the jurisdictionally defective orders of the Puerto Rico court issued while the case was removed.[29] In holding that the remand order could not be accorded *nunc pro tunc* effect, the Supreme Court made this pronouncement: "Federal courts may issue *nunc pro tunc* orders, or 'now for then' orders, to 'reflect the reality' of what has already occurred. 'Such a decree presupposes a decree allowed, or

---

[24] 589 U.S. ----, 140 S.Ct. 696 (2020) (per curiam).

[25] In contrast to an express overruling, abrogation involves the contradiction or invalidation of prior precedent. *See Vincent v. Garland*, 80 F.4th 1197, 1200 (10th Cir. 2023). And absent that contradiction or invalidation by a Supreme Court opinion, this Court is obliged to follow binding Tenth Circuit law. *See id.* (citing *United States v. Salazar*, 987 F.3d 1248, 1254 (10th Cir. 2021) and *United States v. Brooks*, 751 F.3d 1204, 1209-10 (10th Cir. 2014)).

[26] *See City of Rockford v. Mallinckrodt plc (In re Mallinckrodt plc)*, No. 20-12522-JTD, 2022 U.S. Dist. LEXIS 56114, at *23-24, 2022 WL 906451, at *7 (D. Del. Mar. 28, 2022) (holding that *Acevedo* did not alter bankruptcy court authority to approve employment applications *post facto* to the petition date).

[27] *See* 28 U.S.C. § 1334(b).

[28] *Acevedo*, 140 S.Ct. at 699-700. The defendant's bankruptcy proceeding was dismissed just over a month after removal. *Id.* at 700.

[29] *Id.* at 699-701.

ordered, but not entered, through inadvertence of the court.'"[30] But a court cannot use a *nunc pro tunc* order to "make the record what it is not."[31]

The breadth of *Acevedo*'s language has led some bankruptcy courts to conclude that certain forms of *nunc pro tunc* relief regularly employed in bankruptcy matters are now prohibited,[32] including the type of retroactive employment Counsel seeks through the Motion.[33] Other courts, however, have cabined the application of *Acevedo* to "the broader context of the Supreme Court's *nunc pro tunc* jurisprudence," and held that it "does not change existing law or introduce a new limitation on the *nunc pro tunc* powers of courts," but "simply applies a longstanding limitation on that power: i.e., that it may not be used to create jurisdiction retroactively."[34]

The Court agrees with the latter group of cases. The central holding of *Acevedo* is that a *nunc pro tunc* order cannot cure a jurisdictional defect. However, granting retroactive employment does not implicate bankruptcy court jurisdiction, so it does not run afoul of *Acevedo*. As for the

---

[30] *Id.* at 700-01 (quoting Black's Law Dictionary, at 1287; *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990); and *Cuebas y Arredondo v. Cuebas y Arredondo*, 223 U.S. 376, 390 (1912)).

[31] *Id.* at 701 (quoting *Jenkins*, 495 U.S. at 49).

[32] *In re Player's Poker Club, Inc.*, 636 B.R. 811, 824 (Bankr. C.D. Cal. 2022) ("The Supreme Court's decision in *Acevedo* . . . has led some bankruptcy courts to believe there has been a significant shift in the law of *nunc pro tunc* relief and/or to question the continued practice of *nunc pro tunc* relief in bankruptcy." (collecting cases)).

[33] *See, e.g.*, *In re Wellington*, 628 B.R. 19, 23-24 (Bankr. M.D.N.C. 2021) ("[A]fter the Supreme Court's decision in [*Acevedo*], the longstanding procedural mechanism bankruptcy courts had utilized to consider pre-employment compensation—*nunc pro tunc* employment orders—no longer appears to be a permissible exercise of a bankruptcy court's inherent powers or authority under § 105(a)."); *In re Miller*, 620 B.R. 637, 638 (Bankr. E.D. Cal. 2020) ("[*Acevedo*] prohibits the court from approving the professionals' employment *nunc pro tunc*, or effective on the date before employment is actually approved."); *In re Roberts*, 618 B.R. 213, 217 (Bankr. S.D. Ohio 2020) ("Based on the Supreme Court's ruling [in *Acevedo*], the use of *nunc pro tunc* orders to retroactively seek employment of professionals is an improper use of the mechanism and this Court will no longer enter such orders."); *In re Benitez*, No. 8-19-70230-reg, 2020 Bankr. LEXIS 661, at *3, 2020 WL 1272258, at *1 (Bankr. E.D.N.Y. Mar. 13, 2020) ("This Court's reading of *Acevedo* is that utilizing *nunc pro tunc* orders to approve the retention of estate professionals retroactive to some date prior to the actual date of court approval is inappropriate.").

[34] *In re Player's Poker Club*, 636 B.R. at 825; *see also City of Rockford v. Mallinckrodt plc (In re Mallinckrodt plc)*, No. 20-12522-JTD, 2022 U.S. Dist. LEXIS 56114, at *24, 2022 WL 906451, at *8 (D. Del. Mar. 28, 2022) ("*Acevedo*'s limited discussion of *nunc pro tunc* orders is best understood as specific to jurisdiction. . . . *Acevedo* simply reiterates the well-understood distinction between a court 'creating jurisdiction where none exists' and granting retroactive relief on equitable grounds when the court indisputably has jurisdiction to act." (collecting cases)); and *Lemus v. Martinez (In re Lemus)*, BAP No. EC-23-1035-FBC, 2023 Bankr. LEXIS 2762 n.3, 2023 WL 7678233, at *4 n.3 (9th Cir. BAP Nov. 15, 2023) (holding that *Acevedo* does not prohibit retroactive relief from the automatic stay of § 362).

broad language used to explain the permitted uses of *nunc pro tunc* orders, the Supreme Court occasionally uses the idiom "Congress does not hide elephants in mouseholes" as shorthand for the interpretive rule that important changes in the law do not occur through inconspicuous means.[35] While this case involves the interpretation of a Supreme Court case rather than a federal statute, this Court applies a similar interpretive principle and finds it unlikely that the Supreme Court intended, in the space of four sentences,[36] and in a case unrelated to bankruptcy, to effectively abrogate the scores of bankruptcy decisions authorizing *post facto* employment applications, including the Tenth Circuit *Schupbach* decision.

More importantly, *Acevedo* does not apply to the facts of this case for another, pithier, reason: The Tenth Circuit has declared that orders authorizing retroactive employment are, as a matter of taxonomy, not *nunc pro tunc*, and "that the more appropriate term is 'post facto.'"[37] The basis for the distinction was concisely explained by Judge Easterbrook of the Seventh Circuit. He held that *nunc pro tunc* "refers to situations in which the court's records do not accurately reflect its actions," such that "[w]hen the error comes to light, the court corrects the file to show what actually happened."[38] But a request to approve employment retroactive to an earlier date, by contrast, "requires not a correction of the records but a brand new substantive decision."[39] Put another way, retroactive employment orders do not attempt to make the record what it is not; they address the question of whether, based on the existence of sufficient circumstances, an estate

---

[35] *See Whitman v. American Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions.").

[36] As described in *Acevedo*: "Put colorfully, 'nunc pro tunc orders are not some Orwellian vehicle for revisionist history—creating facts that never occurred in fact.'" *Acevedo*, 140 S.Ct. at 701 (quoting *United States v. Gillespie*, 666 F.Supp. 1137, 1139 (N.D. Ill. 1987)). This sentence adds *esprit*, though not new substance, to *Acevedo*'s pronouncement on *nunc pro tunc* orders.

[37] *In re Albrecht*, 233 F.3d 1258, 1260 n.4 (10th Cir. 2000) (citing *In re Jarvis*, 53 F.3d 416, 418 n.2 (1st Cir. 1995)).

[38] *In re Singson*, 41 F.3d 316, 318 (7th Cir. 1994) (citations omitted). Although *Albrecht* does not directly cite *Singson* for this proposition, it cites *Jarvis*, which in turn cites Judge Easterbrook's reasoning in *Singson*.

[39] *Id.* at 319.

professional's employment can be made effective to a date prior to the filing of the employment application.[40]

This may seem a semantic sleight of hand because many courts—including this one—have used *nunc pro tunc* as a synonym for retroactive or *post facto* approval.[41] The U.S. Trustee's objection, too, equates these terms.[42] And even *Schupbach* does so, though this occurs only once and in the context of quoting *Land*,[43] a decision that predates *Albrecht* by nine years. Nonetheless, the clarification in *Albrecht* controls such that the correct term of art for the relief sought by Counsel is *post facto*, rather than *nunc pro tunc*, approval of its employment. Thus, because the focus of *Acevedo* is on *nunc pro tunc* orders, the Court holds that it does not preclude the *post facto* approval of an employment application. Thus, *Schupbach* remains as controlling law, and it governs the outcome of Counsel's Motion.

### B. Application of the Extraordinary Circumstances Standard.

While *Schupbach* held that the extraordinary circumstances standard governs retroactive applications to employ professionals and it listed certain circumstances that are categorically not extraordinary, it did not prescribe a test for applying that standard.[44] Bankruptcy courts in the Tenth Circuit, including this Court in *Sugarloaf*, have used the multi-factor test from *Arkansas*[45] to

---

[40] *See In re Bear Commc'ns, LLC*, No. 21-10495-11, 2021 Bankr. LEXIS 2553, at *15, 2021 WL 4256161, at *7 (Bankr. D. Kan. Sept. 17, 2021) ("This Court is not saying [counsel] has been approved since its engagement on July 4, 2021, and the record merely needs [to be] corrected to reflect that fact. Rather, the Court is analyzing whether [counsel's] employment is authorized as of the date of its engagement.").

[41] This Court did so in *Sugarloaf* and now clarifies that its conflation of these terms was inartful.

[42] Case No. 23-22015, ECF No. 36, at 5 ("Regardless of whether [Counsel's] request is characterized as retroactive or *nunc pro tunc* employment, [*Acevedo*] precludes approval of [Counsel's] employment retroactive to the Chapter 11 petition filing dates.").

[43] *Schupbach*, 808 F.3d at 1220.

[44] Neither did the Tenth Circuit in *Land*. *See Land v. First Nat'l Bank of Alamosa (In re Land)*, 943 F.2d 1265, 1267-68 (10th Cir. 1991). Black's Law Dictionary defines "extraordinary circumstances" as "[a] highly unusual set of facts that are not commonly associated with a particular thing or event." *Extraordinary Circumstances*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[45] *In re Arkansas Co.*, 798 F.2d 645 (3d Cir. 1986).

determine if the circumstances are sufficiently extraordinary to grant *post facto* approval of an application (the "*Arkansas* Test").[46]

The first part of the *Arkansas* Test serves a gatekeeping function and asks whether "the applicant satisfies the disinterestedness requirements of section 327(a) and would therefore have been appointed initially."[47] This is a necessary, though not sufficient, condition for granting retroactive employment.[48] If a court would not have granted a timely application in the first instance, it does not make sense to grant it retroactively. Accordingly, if the applicant does not satisfy this prong, the motion for retroactive employment must be denied and the Court need not proceed further in its analysis.[49]

The second part involves consideration of non-exclusive factors to determine if the circumstances surrounding the delay in filing the application are extraordinary. Those factors include:

> (1) whether the applicant or some other person bore responsibility for applying for approval; (2) whether the applicant was under time pressure to begin service without approval; (3) the amount of delay after the applicant learned that initial approval had not been granted; and (4) the extent to which compensation to the applicant will prejudice innocent third parties.[50]

---

[46] *See, e.g., In re Sugarloaf Holdings, LLC*, No. 18-27705, 2019 Bankr. LEXIS 1172, 2019 WL 1494544 (Bankr. D. Utah Apr. 2, 2019); *In re Kearney*, 581 B.R. 644 (Bankr. D.N.M. 2018); *In re Novinda Corp.*, No. 16-13083 EEB, 2017 Bankr. LEXIS 1006, 2017 WL 1284715 (Bankr. D. Colo. Mar. 17, 2017); and *In re Osborne*, No. 08-12350, 2012 Bankr. LEXIS 5859, 2012 WL 6680356 (Bankr. D. Kan. Dec. 21, 2012).

[47] *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105 (3d Cir. 1988) (citing *Arkansas*, 798 F.2d at 650).

[48] *See Arkansas*, 798 F.2d at 648 ("It does not follow that such retroactive approval should be forthcoming merely because the court would have given approval if timely requested. Such a lenient rule would subvert Congress' purpose in imposing a prior approval requirement.").

[49] In *Sugarloaf*, the Court included the first part of the *Arkansas* Test as merely one factor to be weighed against other considerations. *Sugarloaf*, 2019 Bankr. LEXIS 1172, at *2. Upon further consideration, the Court recalibrates its analysis in *Sugarloaf* to clarify that the first part of the test serves a gatekeeping function. Thus, only if the Court has approved or would approve the employment application, does it proceed to the second part of the inquiry. *In re Kearney*, 581 B.R. at 650. In this way, the two parts of the test are cabined, and satisfaction of the first may not be used to shore up an applicant's shortfalls with the second, nor may an effectual showing in the second be used to rescue an applicant who fails the first.

[50] *Sugarloaf*, 2019 Bankr. LEXIS 1172, at *2-3.

The Court has previously noted that the third and fourth factors, while applied by other courts, are incompatible with *Schupbach*'s bright-line rule or, at best, carry little weight in the analysis.[51] Because *Schupbach*'s focus "is on the circumstances that caused the failure to timely file the application,"[52] the Court believes that the third and fourth factors, which examine matters outside that scope, should be revised or diminished so that the *Arkansas* Test is tailored more closely to comport with *Schupbach*.

Specifically, the primary problem with the third factor is that it focuses on the length of the delay without regard to the reasons behind the delay. At best, it serves as a superficial shorthand for those underlying, substantive reasons. What is more, considering the length of the delay is a minimally helpful exercise because *Schupbach* does not suggest that a shorter delay should weigh more in favor of extraordinary circumstances than a longer one. Therefore, the Court will instead focus on the applicant's diligence in attempting to file the application concurrently with its commencement of bankruptcy services. Part of examining that diligence will involve analyzing the circumstances that caused the delay (e.g., was the delay a result of the applicant's own making), and whether the applicant has provided an adequate explanation for it. For example, an assertion by debtor's counsel that it was simply too busy to file the application with the other bankruptcy papers on the petition date will, without more, typically be inadequate to constitute extraordinary circumstances. This is because debtor's counsel has at least some advance notice of the need for a bankruptcy filing, it should have completed a conflicts check before accepting the representation, and preparation of the employment application should, in most instances, require minimal time. The Court believes this approach hews more closely to the inquiry required by *Schupbach*.

---

[51] *Id.* at *5-6.

[52] *Id.* at *6.

As regards the fourth factor assessing the financial prejudice to other parties-in-interest if *post facto* approval is granted and compensation awarded, the Court views this as even further divorced from the underlying circumstances. As this Court stated in *Sugarloaf*, "the focus of [*Schupbach*] is on the circumstances that caused the failure to timely file the application rather than the impact [*post facto*] relief would have on parties-in-interest."[53] Moreover, the Court also questions this factor's usefulness because it seems the answer will too often disfavor *post facto* relief. In *Sugarloaf*, for example, a party argued that denying retroactive employment "leaves the Debtor with more cash to fund its reorganization and frees up money that may ultimately benefit unsecured creditors."[54] The U.S. Trustee echoed this argument in its objection,[55] and it has appeared in other decisions.[56] This asserted prejudice rests on the immutable truth that estate professionals, whose approved fees are entitled to priority,[57] will be paid before nonpriority, unsecured creditors. If it is a foregone conclusion that the fourth factor will reveal the zero-sum relationship between granting retroactive employment and the payment of lower-priority creditors, the Court sees little utility in this factor.[58] For these reasons, the Court believes the fourth factor

---

[53] *Id.*

[54] *Id.*

[55] Case No. 23-22015, ECF No. 36, at 9.

[56] *See In re Kearney*, 581 B.R. 644, 651 (Bankr. D.N.M. 2018) ("[A]ny [retroactive] payment would reduce the dividend to general unsecured creditors, if the estate turns out to be insolvent."); *In re Novinda Corp.*, No. 16-13083 EEB, 2017 Bankr. LEXIS 1006, at *5, 2017 WL 1284715, at *2 (Bankr. D. Colo. Mar. 17, 2017) ("Of course paying an applicant more in fees will leave less money for other creditors, but if that alone were sufficient to constitute prejudice, then prejudice would always exist.").

[57] § 507(a)(2).

[58] To be fair, Counsel argues that unsecured creditors will not be prejudiced by its retroactive employment because the plan provides unsecured creditors with a *pro rata* share of a fixed $50,000 pot, which will not be diminished by an award of additional fees to Counsel. Case No. 23-22015, ECF No. 51, at 7. This is true, but where a debtor has a fixed income stream, as appears to be the situation in this case, any increase in fees likely impacts the debtor's ability to fund the plan. Nonetheless, even in the absence of prejudice, this factor alone, given the facts of this case, adds little or nothing to the extraordinary circumstances analysis.

should be replaced by a catch-all that considers any other facts and situations that bear on a finding of extraordinary circumstances.[59]

The Court will now apply its modified *Arkansas* Test.

### 1. Part One: Would the Court Have Approved Counsel's Employment Applications Had They Been Filed on the Petition Dates?

Counsel easily satisfies the gatekeeping function of the *Arkansas* Test. After expressly finding that Counsel met the disinterestedness requirements under the Code, the Court granted the Applications to Employ Counsel, albeit effective as of their filing date of May 31, 2023.[60] The competence, experience, and integrity of Counsel is without question, and had the Applications to Employ been filed on the petition dates, the Court would have granted them forthwith.

### 2. Part Two: Has Counsel Shown Extraordinary Circumstances?

The Court will consider in turn each of the four factors as they apply to Counsel's Motion.

> #### a) *Whether Counsel or Another Person Bore Responsibility for Filing the Applications to Employ.*

Estate professionals other than debtor's counsel, such as experts, realtors, and appraisers, must rely on an attorney—typically counsel for the debtor or trustee—to file the required applications to employ under § 327.[61] Where the mechanism for filing an application is outside of the professionals' control, they may receive more leeway in the extraordinary circumstances analysis.[62] However, that leeway may narrow where a professional "is, or should be, familiar with

---

[59] *See, e.g.*, *In re Bear Commc'ns, LLC*, No. 21-10495-11, 2021 Bankr. LEXIS 2553, at *15-16, 2021 WL 4256161, at *7 (Bankr. D. Kan. Sept. 17, 2021) (discussing the justifiable circumstances for the delay by counsel for the creditors' committee in filing its employment application).

[60] Case No. 23-22015, ECF No. 27 and Case No. 23-22042, ECF No. 23.

[61] *See* Fed. R. Bankr. P. 2014(a) (stating that applications to employ under § 327 "shall be made only on application of the trustee [or debtor-in-possession] or committee").

[62] *In re Kearney*, 581 B.R. 644, 651 (Bankr. D.N.M. 2018).

the bankruptcy requirements for employment."[63] By contrast, when the professional bears the responsibility to file the application itself, this factor will weigh against it.

In this case, filing the Applications to Employ rested solely with Counsel; therefore, this factor weighs against granting the Motion.

> b)   *Whether Counsel Was Under Time Pressure to Begin Providing Services Before the Applications to Employ Could Be Filed.*

Certainly there are circumstances where a bankruptcy professional can come under acute pressure to jump midstream into a case to provide immediate and zealous representation to a client who might otherwise be prejudiced by a delay.[64] In such instances, it may take time to complete a conflicts check and, if necessary, obtain conflict waivers, in order to meet the disinterestedness standard demanded of estate professionals. While such situations are not *per se* extraordinary, greater leeway may be given to professionals employed post-petition when their services are immediately required but they need time to perform a conflicts check or to address a conflicts issue raised by the U.S. Trustee or other parties-in-interest prior to filing the employment application.[65]

But the employment of debtor's counsel is generally distinguishable because they often have been working with the debtor at least some days in advance of the bankruptcy filing. Further, debtor's counsel is under the ethical obligation to first perform a conflicts check before being retained by a potential bankruptcy client. Thus, debtor's counsel in a Chapter 11 case will almost always have a preparatory period sufficient to clear conflicts and prepare an employment

---

[63] *In re Sugarloaf Holdings, LLC*, No. 18-27705, 2019 Bankr. LEXIS 1172, at *3, 2019 WL 1494544, at *1 (Bankr. D. Utah Apr. 2, 2019) (finding that because the appraiser had been retained in other bankruptcy cases and was familiar with the § 327 employment process, it had a "responsibility to communicate with debtor's counsel and to verify that an application covering its employment had been timely filed before it began providing services to the debtor").

[64] One noteworthy example is that of counsel to the unsecured creditors' committees. *See In re Bear Commc'ns, LLC*, No. 21-10495-11, 2021 Bankr. LEXIS 2553, at *15-16, 2021 WL 4256161, at *7 (Bankr. D. Kan. Sept. 17, 2021).

[65] *See e.g.,* Fed. R. Bankr. P. 2014(a) that requires the applicant to submit a verified statement setting forth any possible connections with the debtor, parties-in-interest, or the U.S. Trustee. And the applicant cannot appropriately file such a statement until it has completed a thorough conflicts investigation.

application to file with the petition.[66] The same rule applies to other professionals working with the debtor pre-petition in anticipation of a bankruptcy filing. If a case is an emergency filing, and debtor's counsel or other professional lacks a sufficient preparatory period, through no fault of their own, that may alter the analysis of this factor.

Regardless of the type of estate professional, the asserted time pressure that prevents the timely completion of an employment application cannot stem from work that is common and anticipated in Chapter 11 cases. For example, the exigencies of preparing and filing first-day motions do not satisfy this factor.[67] Neither does "negotiating and documenting postpetition financing," nor the resignation of the CFO, which allegedly hindered the completion of a conflicts list.[68] Further, the absence of prejudice to parties or a calendaring error are not extraordinary circumstances.[69] Put concisely, "such circumstances are not 'extraordinary' in the chapter 11 arena. If this Court were to grant [retroactive] employment every time counsel felt pressure to complete other tasks before filing an employment application, it would completely undermine the extraordinary circumstances test."[70]

---

[66] *In re Novinda Corp.*, No. 16-13083 EEB, 2017 Bankr. LEXIS 1006, at *5-6, 2017 WL 1284715, at *2 (Bankr. D. Colo. Mar. 17, 2017) (ruling that counsel could not establish extraordinary circumstances in filing its employment application one week after the petition date because two months prior thereto, the debtor retained counsel to provide bankruptcy advice).

[67] *See Rose Hill Bank v. Mark J. Lazzo, P.A. (In re Schupbach Invs., LLC)*, BAP Nos. KS-13-077 and KS-13-078, 2014 Bankr. LEXIS 4936, at *25-26, 2014 WL 6680122, at *7 (10th Cir. BAP Nov. 25, 2014), *aff'd* 808 F.3d 1215 (10th Cir. 2015); *see also In re Delgado*, 2021 Bankr. LEXIS 2178, at *7, 2021 WL 3519390, at *2 (Bankr. D.P.R. Aug. 10, 2021) (holding that an emergency filing to stay a garnishment and being "bombarded" by the U.S. Trustee with "bankruptcy requirements" did not warrant a finding of extraordinary circumstances).

[68] *Novinda Corp.*, 2017 Bankr. LEXIS 1006, at *6-7 (finding that because counsel was sufficiently comfortable with its conflicts check to file the petition, "[i]t should have also been comfortable enough to file an application for employment").

[69] *In re Everest Crossing, LLC*, No. 09-16664-FJB, 2011 Bankr. LEXIS 3561, 2011 WL 4352119, at *6 (Bankr. D. Mass. Sept. 16, 2011).

[70] *Novinda Corp.*, 2017 Bankr. LEXIS 1006, at *7.

Counsel argues that it operated under "extreme time pressure to begin service without court approval."[71] Specifically, Counsel prepared two sets of required bankruptcy papers so the Debtors' cases could be filed one day after the other.[72] Thereafter, Counsel focused its attention on preparing the Debtors for their initial interviews with the U.S. Trustee approximately a week after the petition dates. These services included responding to inquiries from the Subchapter V Trustee, reviewing the U.S. Trustee guidelines with the Debtors, assisting the Debtors in opening debtor-in-possession accounts, gathering and providing insurance information, and preparing the initial financial reports and related attachments.

The Court acknowledges that this is a good deal of work requiring significant time and attention to detail, but these are also tasks common to and necessitated by essentially every Chapter 11 case.[73] Counsel has argued that these cases compare favorably to *Bear Communications*, where the court found extraordinary circumstances to grant retroactive employment.[74] But *Bear Communications* is divergent on many fronts. Most notably, it involved counsel to the unsecured creditors' committee, who was selected *in medias res* of the bankruptcy case. By contrast, Counsel was retained weeks prior to the petition dates. Moreover, while *Bear Communications* was a large, atypical Chapter 11 case "with many moving parts,"[75] the Court cannot reach the same conclusion here. The Court has reviewed the docket and the Debtors' bankruptcy papers and finds nothing in

---

[71] Case No. 23-22015, ECF No. 31, at 4.

[72] These included the petition, the statements and schedules, and list of creditors.

[73] At oral argument, Counsel contended that very little of what occurs in Chapter 11 is routine, including matters that are required in every case. The argument's implication that many, if not most, Chapter 11 cases could be read to present extraordinary circumstances is incompatible with that term as a definitional matter and stands in irreconcilable tension with *Schupbach*'s enumeration of circumstances, some of them more uncommon than routine, that are categorically not extraordinary. To be sure, Chapter 11 cases can be complex and exhibit wide factual permutations, leading the cases to unfold in different ways. Even so, there remains a core set of routine tasks common to all cases, and the work Counsel performed in the early days of these cases, prior to filing the Applications to Employ, falls squarely within that category.

[74] Case No. 23-22015, ECF No. 51, at 5.

[75] *In re Bear Commc'ns, LLC*, No. 21-10495-11, 2021 Bankr. LEXIS 2553, at *15-16, 2021 WL 4256161, at *7 (Bankr. D. Kan. Sept. 17, 2021).

the particulars of these cases that suggests they are more complicated or require more or different work than other similar bankruptcy filings. Even if these cases later present complex issues, they plainly did not prevent Counsel from timely filing the Applications to Employ. The work Counsel performed prior to filing those applications was routine to Chapter 11, though—and the Court cannot overemphasize this—necessary and important. In sum, the Court concludes that Counsel's work on these routine matters does not evidence extraordinary circumstances, it cannot excuse its delay in filing the Applications to Employ, and it does not justify granting retroactive employment.

More importantly, Counsel's arguments do not explain how these post-petition services prevented the pre-petition preparation of the Applications to Employ. Here, the Debtors respectively filed their bankruptcy petitions on May 18 and 19, 2023. The Statement of Financial Affairs in the Golesis Properties case discloses that Counsel received a retainer on May 1, 2023.[76] In Mr. Golesis's case, Counsel received a pre-petition retainer of $22,000 but the record is unclear regarding the date it was received.[77] Counsel drew down on both retainers pre-petition in the combined amount of $18,890 "for legal services rendered and additional costs incurred prior to but in connection with [the Debtors'] bankruptcy case[s]."[78]

Further, Mr. Golesis completed the credit counseling briefing required by § 109(h) on May 9, 2023—nine days before his bankruptcy filing.[79] Also, the Debtors filed fully completed statements and schedules with their petitions. These facts, combined with Counsel having received a retainer on May 1, 2023, establish that these cases were not emergency filings. Counsel planned

---

[76] Case No. 23-22042, ECF No. 2, at 22. Between payments on May 1 and May 18, 2023 (the day before Golesis Properties filed bankruptcy), Counsel received retainers from Golesis Properties totaling $12,000.

[77] Case No. 23-22015, ECF No. 1, at 145; ECF No. 10, ¶ 13.

[78] Case No. 23-22015, ECF No. 10, ¶ 13; Case No. 23-22042, ECF No. 8, ¶ 13. Of the total amount, $12,940 was for pre-petition services rendered to Mr. Golesis and $5,950 for services rendered to Golesis Properties.

[79] Case No. 23-22015, ECF No. 5.

to file these cases on the Debtors' behalf and performed significant work well in advance of the bankruptcy filings.

But despite days of preparatory work, Counsel did not have its Applications to Employ ready to file on the petition dates. As observed by the *Novinda* court, an application to employ is "a relatively simple process, utilizing forms and filling in the blanks."[80] This task is routinely delegated to paralegals and requires limited attorney involvement beyond the conflicts check.[81] The Court has reviewed the applications and supporting affidavits in this case and notes that other than the disclosures regarding the conflicts check, the retainer, and pre-petition payments, there is little non-standard language—which is to be expected. Counsel argues that while it performed significant pre-petition work required to file the two cases, such work did not include preparation of the Applications to Employ. This implies that Counsel was not aware of the holding and requirements of *Schupbach*.[82]

In summary, the Court has not heard a reason why the Applications to Employ could not have been prepared prior to the bankruptcy filings so they could have been filed with the petitions. Moreover, Counsel's performance of routine services post-petition before it filed the Applications to Employ does not constitute extraordinary circumstances. "[R]etroactive approval should be limited to cases where the hardship [causing the delay] is not of [the applicant's] own making."[83] Because Counsel is responsible for the delay in filing the Applications to Employ, the Court concludes that this factor weighs against granting the Motion.

---

[80] *In re Novinda Corp.*, No. 16-13083 EEB, 2017 Bankr. LEXIS 1006, at *7, 2017 WL 1284715, at *3 (Bankr. D. Colo. Mar. 17, 2017).

[81] *Id.* at *7-8.

[82] Counsel confirmed this view in the Motion, where it stated that "it is [Counsel's] practice to assist the Debtors in filing the applications for employment of counsel within days of filing of the petitions." Case No. 23-22015, ECF No. 31, at 4 n.1.

[83] *In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986).

                c)      *Whether Counsel Was Diligent in Attempting to Timely File the Applications to Employ.*

Counsel essentially argues that it filed the Applications to Employ as soon as possible but that three circumstances delayed that process: first, there were four weekend days and the Memorial Day holiday between the Debtors' petition dates and the date it filed the Applications to Employ; second, Mr. Larsen, who served as the notary for the affidavits filed in support of the Applications to Employ, was out of town from May 24 to May 30; and third, the Debtors' representative for Golesis Properties, Mr. Golesis, was also out of town from May 26 to May 30.

The Court concludes that Counsel's reliance on these circumstances misses the mark for two reasons. First, intervening non-business days and the absences of Mr. Larsen and Mr. Golesis are causes that do not address why the Applications to Employ could not have been filed on the Debtors' petition dates. Mr. Golesis filed his case on Thursday, May 18, 2023, and Golesis Properties followed a day later. Mr. Golesis and Mr. Larsen appear to have been in town on those weekdays.[84] As noted previously, nothing in the record indicates that Counsel could not have prepared the Applications to Employ pre-petition and filed them with the Debtors' petitions. Counsel's reliance on events that occurred after the Debtors' petition dates cannot adequately explain why it did not file the Applications to Employ on the petition dates.

Second, the intervening weekend days and Memorial Day did not prevent Counsel from filing the Applications to Employ earlier. The Court's adoption of electronic filing means that the Clerk's Office is always open so that parties can file documents at any time on any day.[85] Similarly,

---

[84] On May 18, Mr. Golesis signed the petition in his case as well as the Sworn Statement of Dimitri Golesis Regarding Section 1116 Requirements for Small Business Case, which Mr. Larsen notarized after representing that Mr. Golesis personally appeared before him. Case No. 23-22015, ECF No. 1, at 6, 8-9. Mr. Golesis and Mr. Larsen did likewise in the Golesis Properties case on May 19. Case No. 23-22042, ECF No. 1, at 5-7.

[85] *E.g., McDow v. Runkle (In re Runkle)*, 333 B.R. 734, 739 n.3 (Bankr. D. Md. 2005) ("Filing by ECF ends the concept of the clerk's office being inaccessible on weekends and legal holidays. Under ECF, the clerk's office is always open for the reception of filings.").

Counsel has not explained why it could not have filed the Applications to Employ before Mr. Golesis and Mr. Larsen left town. Mr. Larsen's absence as a notary is particularly unavailing as an explanation. As correctly observed by the U.S. Trustee, an employment application does not require a notarized signature but rather "a verified statement of the person to be employed setting forth the person's connections" with parties-in-interest.[86] Counsel has asserted that a notarized statement is best practice, but this too fails to explain why, if Counsel viewed notarization as a *sine qua non*, it did not seek out another notary during Mr. Larsen's absence.

In short, the record indicates that Counsel believed it could file the Applications to Employ within some days after the petition dates, or even longer if Mr. Larsen, as its in-house notary, was out of town. This belief is inconsistent with *Schupbach*'s bright-line standard. While Counsel's delay in filing the Applications to Employ is not extensive in absolute terms—less than two weeks for each of the Debtors—Counsel's justification for the delay is inadequate under *Schupbach*. Because the Court concludes that the Applications to Employ could and should have been filed earlier, this factor weighs against the Motion.

> d) *Other Circumstances Bearing on Whether to Grant Retroactive Employment*

There are two remaining circumstances relevant to the Motion that the Court will address under this factor. The first concerns the deterrent effect of denying the Motion. While the extraordinary circumstances standard serves "to deter attorneys and other professionals from general nonobservance of section 327,"[87] Counsel asserts it is well-versed in bankruptcy law and practices at the highest standards, and thus does not need such deterrence.[88] In fact, Counsel

---

[86] Fed. R. Bankr. P. 2014(a).

[87] *Mark J. Lazzo, P.A. v. Rose Hill Bank (In re Schupbach Invs., L.L.C.)*, 808 F.3d 1215, 1220 (10th Cir. 2015) (quoting 3 Collier On Bankruptcy ¶ 327.03[3]).

[88] Case No. 23-22015, ECF No. 31, at 3-4.

contends that applying *Schupbach*'s rule here would unfairly penalize it. The Court acknowledges Counsel's expertise, its record of successfully prosecuting other reorganization cases, and that denying its fees incurred in the gap period will have a financial impact. However, its assertion that being well-versed in applicable bankruptcy law eliminates the need to deter it from noncompliance with § 327 is belied by the fact that it seemed unaware of the requirements of *Schupbach* and its resulting cases.[89] Moreover, any deterrent effect goes beyond that which applies specifically to Counsel. Other professionals who file employment applications before the Court may generally be deterred from nonobservance of § 327, and the language of *Schupbach* suggests that the Tenth Circuit views such general deterrence favorably. The Court concludes that the issue of deterrence weighs in favor of denying the Motion.

Second, Counsel argues that the Motion should be granted because the Applications to Employ were filed within the 21-day waiting period of Rule 6003. That rule prohibits courts, except where "necessary to avoid immediate and irreparable harm," from granting employment applications during the 21-day period following the petition date.[90] Counsel contends that Rule 6003 contemplates that an employment application will be filed within 21 days of the petition date. The Court reads it differently. An order granting an application to employ filed within the 21-day period will only relate back to the date the application was filed—but that is as far as Rule 6003 goes. To hold that Rule 6003 allows a court to grant employment retroactive to a date prior to the employment application is antithetical to the holdings and policy statements in *Schupbach*. Thus,

---

[89] The Bankruptcy Appellate Panel's decision in *Schupbach* rejected a similar argument even though it found that counsel's "noncompliance with procedural rules did not rise to the level of the flagrant disrespect of the bankruptcy court's statutorily mandated role in employing and compensating attorneys demonstrated in *Land*." *Rose Hill Bank v. Mark J. Lazzo, P.A. (In re Schupbach Invs., LLC)*, BAP Nos. KS-13-077 and KS-13-078, 2014 Bankr. LEXIS 4936, at *25, 2014 WL 6680122, at *7 (10th Cir. BAP Nov. 25, 2014), *aff'd* 808 F.3d 1215 (10th Cir. 2015).

[90] Fed. R. Bankr. P. 6003.

Rule 6003 does not create a *Schupbach*-free grace period for filing applications to employ. In short, when taken as a whole, this factor weighs against granting the Motion.

## III.    CONCLUSION

In summary, while Counsel passes the gateway test of *Arkansas*, its Motion fails the second section regarding extraordinary circumstances. Counsel was ostensibly not aware of and otherwise did not comply with the bright-line requirement of *Schupbach* to file its Applications to Employ on the petition date. And the timing and particulars of these bankruptcy cases, especially given the preparatory period leading up to the petition dates, do not support a finding that the failure to file the Applications to Employ on the petition dates was caused by extraordinary circumstances. Therefore, under the standards of *Schupbach* and *Arkansas*, the Court cannot grant *post facto* relief.

The Court acknowledges that between the petition date and the filing of the Applications to Employ Counsel diligently and capably performed a significant amount of bankruptcy-related work for the Debtors' benefit. The Court is also aware of the impact a denial of fees for such services will have on Counsel. But neither of these otherwise compelling points can override the mandate of *Schupbach*. As expressed by Judge Brown in *Novinda*, "the extraordinary circumstances test is meant to counteract such sympathies and prevent bankruptcy courts from granting relief based purely on 'claims of hardship due to work already performed.'"[91] Thus, both Counsel and the Court are bound by the standards set by the Tenth Circuit that require court approval before compensation can be awarded and a showing of extraordinary circumstances before *post facto* approval of employment can be granted.

For these reasons, the Court denies Counsel's Motion. The Court will enter a separate Order and Judgment in accordance with this Memorandum Decision.

---

[91] *In re Novinda Corp.*, No. 16-13083 EEB, 2017 Bankr. LEXIS 1006, at *10, 2017 WL 1284715, at *4 (Bankr. D. Colo. Mar. 17, 2017) (quoting *In re Arkansas*, 798 F.2d 645, 649 (3d Cir. 1986)).

## <u>DESIGNATION OF PARTIES TO RECEIVE NOTICE</u>

Service of the foregoing **MEMORANDUM DECISION ON DEBTORS' MOTION FOR RETROACTIVE EMPLOYMENT** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| Brett N. Anderson | bretta@blackburn-stoll.com |
| P. Matthew Cox | mw@scmlaw.com, ec@scmlaw.com |
| Andres Diaz | courtmail@adexpresslaw.com |
| John S. Gygi | john.gygi@sba.gov |
| Timothy J. Larsen | tlarsen@adexpresslaw.com |
| Melanie F. Mitchell | mmitchell@slco.org, BWhitehead@slco.org |
| David W. Newman | david.w.newman@usdoj.gov, Lindsey.Huston@usdoj.gov, James.Gee@usdoj.gov, Rinehart.Peshell@usdoj.gov, Rachelle.D.Armstrong@usdoj.gov, Brittany.Eichorn@usdoj.gov |
| David L. Pinkston | dlp@scmlaw.com, ec@scmlaw.com, mw@scmlaw.com, intakeclerk@scmlaw.com |
| Brian M. Rothschild | brothschild@parsonsbehle.com, ecf@parsonsbehle.com, docket@parsonsbehle.com, ecf.alert+Rothschild@titlexi.com, cbmr11@trustesolutions.net |
| Jonathan R. Rudd | jonathan@ruddfirm.com, nnielsen@ruddfirm.com, cwatters@ruddfirm.com |
| United States Trustee | USTPRegion19.SK.ECF@usdoj.gov |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- None.